UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ANDY SPARKS, JR.,

                Plaintiff,        Civil Action No. 16-10752
                                       Honorable Mark A. Goldsmith
                                       Magistrate Judge David R. Grand

   v.

DR. CRAIG HUTCHINSON and
SUBRINA AIKEN, R.N.,

                Defendants.
_____/

**REPORT AND RECOMMENDATION TO GRANT DEFENDANT
DR. HUTCHINSON'S MOTION FOR SUMMARY JUDGMENT ON THE PLEADINGS
FOR FAILURE TO EXHAUST ADMINISTRATIVE REMEDIES [14] AND
DEFENDANT AIKEN'S MOTION TO DISMISS [28], AND TO DENY PLAINTIFF'S
MOTION TO AMEND HIS COMPLAINT FOR PUNITIVE DAMAGES [23, 24]**

**I.     RECOMMENDATION**

Before the Court is Defendant Dr. Craig Hutchinson's motion for summary judgment on the pleadings for failure to exhaust administrative remedies (Doc. #14), as well as Defendant Subrina Aiken, R.N.'s motion to dismiss *pro se* Plaintiff Andy Sparks, Jr.'s complaint.[1] (Doc. #28). This case has been referred to this Court for all pretrial matters pursuant to 28 U.S.C. § 636(b)(1)(A) and (B). (Doc. #6). For the following reasons, the Court RECOMMENDS that Dr. Hutchinson's motion (Doc. #14) and Aiken's motion (Doc. #28) be GRANTED, and that Sparks' complaint be dismissed WITHOUT PREJUDICE as to Dr. Hutchinson and WITH PREJUDICE as to Aiken.[2] Accordingly, the Court also RECOMMENDS that Sparks' motion to

---

[1] Both motions have been fully briefed. (Docs. #14, #22, #25; #28, #35, #36).

[2] The Court having reviewed the briefs and determined that oral argument would not assist the Court in its recommendation, dispenses with the need for a hearing pursuant to Local Rule

amend his complaint for punitive damages be DENIED AS MOOT. (Docs. #23, #24).

## II. REPORT

### A. Background

When Sparks filed his instant complaint on February 25, 2016, he was incarcerated at the Parnall Correctional Facility in Jackson, Michigan.[3] (Doc. #1 at 11). Sparks brings this complaint under 42 U.S.C. § 1983 against Dr. Hutchinson and Aiken alleging violation of his Eighth Amendment right to be free from cruel and unusual punishment. (*Id.* at 4). The crux of his complaint is that he has Hepatitis C and rapid cirrhosis of the liver, yet is not receiving proper medical care. (*Id.*).

Sparks alleges that he is dying and that Dr. Hutchinson should have started his Hepatitis C treatment one year ago. (*Id.*). Sparks alleges that this deprivation of adequate medical care has caused him physical and mental damage. (*Id.*). In addition, he alleges that it has subjected him to an increased risk of developing a permanent impairment or serious disease, such as liver cancer. (*Id.*). Sparks alleges that he filed a grievance with the Michigan Department of Corrections ("MDOC") regarding "this medical neglect" and that Aiken's response to that grievance is "[p]ure" deliberate indifference to his life-threatening condition. (*Id.*). Sparks alleges that he filed his complaint seeking immediate Hepatitis C treatment to save his life. (*Id.*).

Attached to his complaint, Sparks included three consultation notes by Dr. Hutchinson from June 10, 2014, June 9, 2015, and December 8, 2015. (*Id.* at 6-8). Sparks also attached a Step II Grievance Appeal Response signed by Aiken on January 11, 2016. (*Id.* at 9). At the bottom of this page, there is a handwritten note from Sparks that says: "I have not waited for

---

7.1(f)(2).

[3] The docket indicates that Sparks is now incarcerated at the Central Michigan Correctional Facility in St. Louis, Michigan.

[S]tep III Grievance to come back because I am afraid my time is quickly running out." (*Id.*).

Dr. Hutchinson moves for judgment on the pleadings on grounds that Sparks did not exhaust his administrative remedies before filing his complaint. (Doc. #14). Dr. Hutchinson filed his motion under Fed. R. Civ. P. 12(c) and as an unenumerated Rule 12(b) motion. (*Id.* at 10-12). In support, he attached grievance records and the MDOC's Grievance Policy Directive. (Docs. #14-1, #14-2).

In response to Dr. Hutchinson's motion, Sparks argues that he properly exhausted his administrative remedies because he filed a Step III grievance regarding his instant claims. (Doc. #22 at 5). But he concedes that he initiated this lawsuit before receiving a response to this Step III grievance appeal. (*Id.*). He argues that he could not wait for the response – which ultimately was a denial – because he "was and is liter[a]lly dying" due to a lack of detection and care that resulted in him developing Stage IV Fibrosis. (*Id.*). Sparks allegedly filed his complaint because he wanted the Court to force Dr. Hutchinson and Aiken to give him the proper medication for his condition. (*Id.*).

Meanwhile, Aiken moves to dismiss Sparks' complaint for failure to state a claim and on the basis of qualified immunity because the "sole involvement" Sparks attributes to her was responding to his Step II grievance appeal. (Doc. #28 at 6). In an affidavit Aiken submitted to the Court, she avers that she is a registered nurse with the MDOC, that she responded to a Step II Grievance Appeal on January 11, 2016 regarding Sparks' complaint about treatment for Hepatitis C, and that to the best of her ability, experience, and training, she determined that his medical needs were being addressed and that his grievance should be denied. (Doc. #36-2, Aiken Aff'd ¶¶ 2, 5). More specifically, she avers that Sparks was being treated by Dr. Hutchinson, an Infectious Disease Medical ID specialist, who determines "any and all"

3

treatments with regards to Hepatitis C. (*Id.*). Aiken also avers that her actions at issue in this case were done "during the course of [her] employment, within the scope of [her] authority, in good faith and in the exercise of [her] discretion as an R.N. and as the Respondent in a Step II Grievance appeal with [the] MDOC." (*Id.* at ¶ 3).

### B. Legal Standard

#### 1. *Motion for Judgment on the Pleadings for Failure to Exhaust Remedies*

Pursuant to Fed. R. Civ. P. 12(c), a motion for judgment on the pleadings may be granted where "no material issue of fact exists and the party making the motion is entitled to judgment as a matter of law." *JP Morgan Chase Bank, N.A. v. Winget*, 510 F.3d 577, 582 (6th Cir. 2007) (internal quotation and citation omitted). As the Sixth Circuit noted, "[f]or purposes of a motion for judgment on the pleadings, all well-pleaded material allegations of the pleadings of the opposing party must be taken as true, and the motion may be granted only if the moving party is nevertheless clearly entitled to judgment." *Id.* (internal quotation and citation omitted).

The Prison Litigation Reform Act ("PLRA") requires that prisoners exhaust their administrative remedies before bringing suit. *See* 42 U.S.C. § 1997e(a). Prisoners are required to properly exhaust their administrative remedies, meaning that untimely or otherwise procedurally defective administrative grievances or appeals that do not satisfy the prison's exhaustion policy are also insufficient to satisfy the PLRA's exhaustion requirement. *Woodford v. Ngo*, 548 U.S. 81, 83-84 (2006); *Jones v. Bock*, 549 U.S. 199 (2007). This "exhaustion" requirement serves two main purposes: it promotes efficiency by encouraging the resolution of claims at the agency level before litigation is commenced, and it protects administrative authority by allowing the agency an opportunity to correct its own mistakes before being haled into federal court. *See Woodford*, 548 U.S. at 89. However, "inmates are not required to

4

specially plead or demonstrate exhaustion in their complaints." *Jones*, 549 U.S. at 216. Under *Jones*, it is the defendant's burden to assert non-exhaustion as an affirmative defense. *Id.*; *Grinter v. Knight*, 532 F.3d 567 (6th Cir. 2008). A dismissal for failure to exhaust is without prejudice. *Boyd v. Corr. Corp. of Am.*, 380 F.3d 989, 994 (6th Cir. 2006) (citing *Knuckles El v. Toombs*, 215 F.3d 640 (6th Cir. 2000)); *see also Morris v. Newberry Corr. Facility*, No. 11-10938, 2013 WL 847520, at *1 (E.D. Mich. Mar. 7, 2013).

Courts have diverged in determining the proper vehicle for dismissal based on failure to exhaust remedies. The problem was summarized concisely in Magistrate Judge Whalen's Report and Recommendation in *Twohig v. Riley*, No. 12-11832, 2013 WL 3773365 (E.D. Mich. July 17, 2013):

> There has been a divergence of viewpoints as to the correct procedural basis for a dismissal premised on non-exhaustion. In *Jones v. Bock*, 127 S.Ct. at 921, the Supreme Court suggested in dicta that failure to exhaust might be a basis for dismissal under Rule 12(b)(6). However, in *Pointer v. Wilkinson*, 502 F.3d 369 (6th Cir. 2007), the Sixth Circuit found that a dismissal based on exhaustion may be distinct from a dismissal for failure to state a claim upon which relief may be granted. *See also Snider v. Melindez*, 199 F.3d 108, 112 (2d Cir. 1999) (concluding that failure to state a claim as used in § 1997e(c) and § 1915(g) does not include failure to exhaust administrative remedies). In *Melton v. Michigan Corrections Commission*, 2009 U.S. Dist. LEXIS 21319, 2009 WL 722688 (E.D. Mich. 2009), the Court granted a motion for summary judgment, dismissing the complaint without prejudice for failure to exhaust . . . .
>
> In the context of the PLRA, a plaintiff's failure to exhaust administrative remedies does not seem to fit within Fed.R.Civ.P. 12(b)(6). After *Jones v. Bock*, failure to exhaust is not a pleading requirement, so there is no determination of whether a plaintiff has stated a claim on the face of the complaint. And unlike the typical 12(b)(6) motion, dismissal is without prejudice. Rule 12(b)(1) (subject matter jurisdiction) clearly does not apply, since "the PLRA exhaustion requirement is not jurisdictional." *Woodford v. Ngo*, 548 U.S. 81, 101, 126 S.Ct. 2378, 165 L.Ed.2d 368 (2006). Summary judgment seems inapposite since there is no determination of the merits of the case, and "judgment" is not entered. *See Studio Electrical Technicians Local 728 v. International Photographers of Motion Picture Industries, Local 659*, 598 F.2d 551, 552

5

>   (9th Cir. 1979) ("Summary judgment is on the merits," and failure to exhaust, as a matter in abatement, "ordinarily" does "not deal with the merits.") . . . .

*Id.* at *3. Citing the decisions of other circuit courts for support, Magistrate Judge Whalen concluded that the best approach is to treat a motion to dismiss based on failure to exhaust as an unenumerated Rule 12(b) motion. *Id.* at *4. Since *Twohig*, other judges in this district have also found this appropriate. *See Boulding v. Mich. Dept. of Corr.*, No. 13-14325, 2015 WL 136195 (E.D. Mich. Jan. 5, 2015); *Stevens v. Potila*, No. 14-10863, 2015 WL 1245889 (E.D. Mich. Mar. 18, 2015); *Weathington v. Cnty. of Wayne*, No. 12-13573, 2015 WL 3771460, at *1, 3-4 (E.D. Mich. May 22, 2015); *Threet v. Phillips*, No. 14-13345, 2016 WL 374121, at *2-3 (E.D. Mich. Feb. 1, 2016); *Ward-El v. Luckey*, No. 15-10238, 2016 WL 1253540, at *1-2 (E.D. Mich. Mar. 10, 2016); *Price v. Jordan*, No. 14-10194, 2016 WL 5109534, at *2 (E.D. Mich. Aug. 8, 2016). The Court will therefore consider Dr. Hutchinson's motion as an unenumerated Rule 12(b) motion.

>   2.   *Motion to Dismiss for Failure to State a Claim*

A motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) tests a complaint's legal sufficiency. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). The plausibility standard "does not impose a probability requirement at the pleading stage; it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of illegal [conduct]." *Twombly*, 550 U.S. at 556.

6

Put another way, the complaint's allegations "must do more than create speculation or suspicion of a legally cognizable cause of action; they must show *entitlement* to relief." *League of United Latin Am. Citizens v. Bredesen*, 500 F.3d 523, 527 (6th Cir. 2007) (emphasis in original) (citing *Twombly*, 550 U.S. at 555-56).

In deciding whether a plaintiff has set forth a "plausible" claim, the Court must accept the factual allegations in the complaint[4] as true. *Id.*; *see also Erickson v. Pardus*, 551 U.S. 89, 94 (2007). That tenet, however, "is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to prevent a complaint from being dismissed on grounds that it fails to comport sufficiently with basic pleading requirements. *Iqbal*, 556 U.S. at 678; *see also Twombly*, 550 U.S. at 555; *Howard v. City of Girard, Ohio*, 346 F. App'x 49, 51 (6th Cir. 2009). Ultimately, "[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

Pleadings filed by *pro se* litigants are entitled to a more liberal reading than would be afforded to formal pleadings drafted by lawyers. *See Thomas v. Eby*, 481 F.3d 434, 437 (6th Cir. 2007). Nonetheless, "[t]he leniency granted to pro se [litigants] . . . is not boundless," *Martin v. Overton*, 391 F.3d 710, 714 (6th Cir. 2004), and "such complaints still must plead sufficient facts to show a redressable legal wrong has been committed." *Baker v. Salvation Army*, No. 09-

---

[4] A reviewing court's consideration of a motion to dismiss under Rule 12(b)(6) is ordinarily confined to the pleadings. *Jones v. City of Cincinnati*, 521 F.3d 555, 562 (6th Cir. 2008). Thus, assessment of the complaint's facial sufficiency ordinarily must be undertaken without resort to matters outside the pleadings. *Wysocki v. Int'l Bus. Mach. Corp.*, 607 F.3d 1102, 1104 (6th Cir. 2010). However, "documents attached to the pleadings become part of the pleadings and may be considered on a motion to dismiss." *Commercial Money Ctr., Inc. v. Ill. Union Ins. Co.*, 508 F.3d 327, 335-36 (6th Cir. 2007) (citing Fed. R. Civ. P. 10(c)); *see also Koubriti v. Convertino*, 593 F.3d 459, 463 n.1 (6th Cir. 2010).

11424, 2011 WL 1233200, at *3 (E.D. Mich. Mar. 30, 2011).

### C. Analysis

#### 1. *Defendant Dr. Hutchinson*

Dr. Hutchinson argues that Sparks' complaint should be dismissed because Sparks' "grievance records show that he did not complete the grievance procedure until the MDOC responded to his Step III appeal on April 19, 2016, **after** this lawsuit was filed." (Doc. #14 at 17) (emphasis in original) (citing Doc. #14-1 at 17-22). Dr. Hutchinson points out that Sparks initiated this lawsuit on February 19, 2016, and it was docketed with the Court on March 1, 2016. (*Id.*). Although for a reason slightly different than that urged by Dr. Hutchinson, *see infra* at 11 n.6, the Court agrees that dismissal of Sparks' complaint for failure to exhaust administrative remedies is appropriate.

Under the MDOC's Grievance Policy Directive, a prisoner seeking redress for a grievance must follow a specific process. (Doc. #14-2, MDOC Policy Dir.). First, he must "attempt to resolve the issue with the staff member involved within two business days of becoming aware of a grievable issue," unless prevented from doing so "by circumstances beyond his/her control" or because the issue falls within the jurisdiction of another division. (*Id.* at ¶ P). If the issue is not resolved, the prisoner may file a Step I grievance within five business days of this attempt. (*Id.*). Upon receiving an unsatisfactory or untimely response to his Step I grievance, a prisoner may appeal this by filing a Step II grievance within ten business days after receiving the Step I response, or if no response was received, within ten business days after the date the response was due, including extensions. (*Id.* at ¶¶ I, BB). The prisoner must follow the same procedure and timeline for any Step III appeal he wishes to file. (*Id.* at ¶¶ I, FF). A prisoner's administrative remedies as to a grievable issue are exhausted "only when filed as a

grievance through all three steps of the grievance process in compliance with [the MDOC's Policy]." (*Id.* at ¶ B).

Here, Sparks concedes that he did not grieve his complaint through Step III of the process,[5] but he argues that this was because he "was and is liter[a]lly dying" from a "terminal" illness that had not been properly detected or treated. (Doc. #22 at 5). Thus, he argues that he could not wait for a Step III response before filing his complaint seeking proper medical treatment. (*Id.*). He points out that when he later received the response to his Step III grievance appeal, it was a denial. (*Id.*). Sparks' argument is not well-taken.

The PLRA "requires prisoners desiring to bring civil rights claims to exhaust all available administrative remedies **prior to filing suit in federal court**." *Williams v. Norton*, 23 F. App'x 396, 397 (6th Cir. 2001) (emphasis added) (citing 42 U.S.C. § 1997e(a) and *Brown v. Toombs,* 139 F.3d 1102, 1104 (6th Cir. 1998)); *Freeman v. Francis*, 196 F.3d 641, 645 (6th Cir. 1999); *Cochran v. Caruso*, No. 07-228, 2008 WL 397597, at *3 (W.D. Mich. Feb. 11, 2008). "A prisoner must exhaust available administrative remedies" in compliance with applicable deadlines and procedural rules, "even if the prisoner may not be able to obtain the specific type of relief he seeks in the state administrative process." *Cochran*, 2008 WL 397597, at *3; *Sango v. LeClaire*, No. 15-136, 2016 WL 4441532, at *2-3 (W.D. Mich. Aug. 1, 2016), *report and recommendation adopted*, No. 15-136, 2016 WL 4431490 (W.D. Mich. Aug. 18, 2016) (citing *Porter v. Nussle*, 534 U.S. 516, 520 (2002); *Booth v. Churner*, 532 U.S. 731, 741 (2001); *Freeman*, 196 F.3d at 643); *Woodford*, 548 U.S. at 90-95. "Compliance with the prison

---

[5] Specifically, Sparks explains that he "did properly exhaust his claims with exception to the finality of the Step III Response that [t]he MDOC Director's Office with-held [sic] . . . . Plaintiff in all honesty to the Court, did file his appeal to the MDOC Director's Office, but could not wait for the Response." (Doc. #22 at 5). Sparks' argument centers around the alleged severity of his medical condition; he does not provide any additional arguments, information, or documentation regarding his allegation that the Step III response was "withheld" from him.

9

grievance procedures . . . is all that is required by the PLRA to properly exhaust." *Cochran*, 2008 WL 397597, at *3 (citing *Jones,* 549 U.S. at 218). Importantly, under the PLRA, there is no exception to the exhaustion requirement "for 'exigent circumstances,' be they medical exigencies or otherwise." *Boulding*, 2015 WL 136195, at *2; *Cochran*, 2008 WL 397597, at *5 (collecting cases). As a result, "[w]hen a prisoner has filed a civil rights complaint in federal court without first exhausting his administrative remedies, dismissal of the complaint is appropriate." *Williams*, 23 F. App'x at 397 (citing *Freeman,* 196 F.3d at 645; *Brown,* 139 F.3d at 1104).

In this case, there is no question that Sparks failed to properly exhaust his administrative remedies as laid out in the MDOC's Policy before filing his complaint, and his concerns about the severity of his medical condition do not allow an exception to this exhaustion requirement. *Boulding*, 2015 WL 136195, at *2; *Cochran*, 2008 WL 397597, at *5 (adopting recommendation that plaintiff's action be dismissed without prejudice where plaintiff alleged that he did not claim proper exhaustion "[d]ue to the severity of his medical condition, and urgent need for swift medical intervention, which [he] felt while going through the grievance process would quite possibly cause [him] a death sentence" because the "statutory exhaustion requirement does not provide an exception for medical claims or exigent circumstances").

Thus, while the Court is sensitive to Sparks' desire to expedite the resolution of his claim and the fact that his Step III grievance has now been denied, neither is a basis for denying Dr. Hutchinson's motion. In fact, such a denial would be tantamount to a ruling that an inmate need not fully exhaust his grievance before commencing a federal court action whenever he subjectively believes more expeditious relief is warranted. Such a ruling would simply be contrary to established law. The recent case of *Fulkerson v. Washington*, No. 16-537, 2016 WL

7337157, at *3 (W.D. Mich. Nov. 3, 2016), *report and recommendation adopted*, No. 16-537, 2016 WL 7326534 (W.D. Mich. Dec. 16, 2016), makes the point. In that case, the court wrote:

> According to MDOC policy, "[t]he total grievance process from the point of filing a Step I grievance to providing a Step III response shall generally be completed within 120 calendar days unless an extension has been approved in writing by the Grievance Coordinator at Step I and/or Step II." Mich. Dep't. of Corr., Policy Directive 03.02.130 ¶ S. MDOC policy further provides that if prison officials fail to timely respond to a grievance, the inmate may proceed to the next step in the grievance process. *See* Mich. Dep't. of Corr., Policy Directive 03.02.130 ¶ T.
>
> Plaintiff initiated this grievance on March 1, 2016. Thus, the administrative grievance process was not properly completed until the sooner of the following: (1) Plaintiff receiving a response to his Step III grievance, or (2) the expiration, on June 29, 2016, of the 120-day grievance response period. When Plaintiff initiated the present lawsuit on May 17, 2016, however, he had neither received a response to his Step III grievance nor had the 120-day period expired. Simply stated, when Plaintiff initiated the present action, the MDOC grievance process had not been completed. Moreover, the fact that prison officials did not provide a response to Plaintiff's Step III grievance until after the expiration of the 120-day period is irrelevant. As the Sixth Circuit has made clear, whether the grievance process is properly completed after the initiation of legal action is irrelevant. Instead, the relevant question is whether the grievance process has been properly completed at the moment legal action is initiated.

*Fulkerson*, 2016 WL 7337157, at *3.

Similarly, Sparks filed his instant complaint well before the expiration of the presumptive period for completing the grievance process. Sparks filed his Step I grievance on December 11, 2015. (Doc. #14-1 at 20). Thus, he needed to wait until April 10, 2016[6] to file his complaint. *Fulkerson*, 2016 WL 7337157, at *3. Because Sparks filed his complaint on February 25, 2016, he failed to properly exhaust the grievance, Dr. Hutchinson's motion should be granted, and Sparks' complaint against him should be dismissed without prejudice. *Id.*; *Boyd*, 380 F.3d at 994 (dismissal for failure to exhaust is without prejudice); *Freeman*, 196 F.3d at 645 ("[W]e

---

[6] The Step III response was not provided until about a week later, on April 18, 2016. (Doc. #14-1 at 17).

11

must dismiss plaintiff's complaint because he filed his federal complaint before allowing the administrative process to be completed."); *Williams*, 23 F. App'x at 397 (concluding that the district court properly dismissed the plaintiff's complaint without prejudice for failure to exhaust administrative remedies); *Boulding*, 2015 WL 136195, at *3 ("Because Plaintiff failed to exhaust his administrative remedies prior to filing suit, these Defendants must be dismissed without prejudice.").

        2.     *Defendant Aiken*

In her motion to dismiss, Aiken argues that she is entitled to qualified immunity because her only involvement according to the complaint was with the grievance process, which she argues is insufficient to impose liability on her. (Doc. #28 at 7-12). The Court finds merit to this argument.

        *a.    General Legal Standards*

To demonstrate liability under § 1983, a plaintiff must first establish that each named defendant acted under color of state law and that her actions violated rights secured by the Constitution and/or laws of the United States. *See Baker v. McCollan*, 443 U.S. 137 (1989). The plaintiff also must make a clear showing that each named defendant was personally involved in the activity that forms the basis of the complaint. *See Rizzo v. Goode*, 423 U.S. 362, 377 (1976); *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984). Moreover, § 1983 liability cannot be premised upon mere allegations of *respondeat superior*, *i.e.*, supervisory liability; rather, a defendant can only be liable under § 1983 if the plaintiff shows that she personally participated in, or otherwise authorized, approved, or knowingly acquiesced in, the allegedly unconstitutional conduct. *See Monell v. New York City Dept. of Soc. Servs.*, 436 U.S. 658, 691 (1978); *Bellamy*, 729 F.2d at 421. Thus, a supervisory official's awareness of a complaint of

allegedly illegal conduct, and her subsequent failure to take corrective action, is insufficient to trigger § 1983 liability. *See Poe v. Haydon*, 853 F.2d 418, 429 (6th Cir. 1988). Furthermore, mere participation in the grievance process, including signing a grievance response, is insufficient to show personal involvement. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999); *Lee v. Mich. Parole Board*, 104 F. App'x 490, 493 (6th Cir. 2003). Rather, liability under § 1983 must be based upon active unconstitutional behavior, not a "mere failure to act." *Shehee*, 199 F.3d at 300.

Under the doctrine of qualified immunity, governmental officials performing discretionary functions are shielded from civil liability unless their conduct violates a clearly established constitutional right. *See Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Qualified immunity is premised upon the avoidance of unnecessary burdens of litigation, and the privilege is therefore an immunity from suit and not a mere defense to liability. *See Saucier v. Katz*, 533 U.S. 194, 200 (2001). Determining the applicability of qualified immunity requires a two-step inquiry into whether the facts, when viewed in the light most favorable to the plaintiff, would permit a reasonable juror to find that: (1) the defendant violated a constitutional right; and (2) the right was clearly established. *Id.* at 201. In conducting this inquiry, the court is "permitted to exercise [its] sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson v. Callahan*, 555 U.S. 223, 236 (2009); *see also Bishop v. Hackel*, 636 F.3d 757, 772 (6th Cir. 2011). Here, Sparks' own allegations against Aiken show that she violated no constitutional right.

The only conduct alleged by Sparks against Aiken is in connection with her response to his Step II grievance appeal, which Sparks claims demonstrates her "[p]ure" deliberate indifference

to his medical needs. (Doc. #1 at 4). But at no point does he allege that Aiken played a role beyond that of a "Medical Grievant Responder." (*Id.* at 2). According to the complaint, Aiken reviewed Sparks' Step I grievance, the response to his Step I grievance, and Sparks' Step II reason for appeal. (*Id.* at 9). She then conducted a Step II investigation, where she reviewed electronic health records by Dr. Hutchinson. (*Id.*). Based on her findings, she denied Sparks' grievance because she concluded that Sparks' medical needs were being addressed and that Dr. Hutchinson was monitoring him. (*Id.*).

None of that alleged conduct violates a constitutional right because the law in this circuit is clear that the "mere denial of a prisoner's grievance states no claim of constitutional dimension." *Alder v. Corr. Med. Servs.*, 73 F. App'x 839, 841 (6th Cir. 2003). *See also*, *Grinter v. Knight*, 532 F.3d 567, 576 (6th Cir. 2008) ("The 'denial of administrative grievances or the failure to act by prison officials does not subject supervisors to liability under § 1983.'") (quoting *Shehee*, 199 F.3d at 300); *Lee*, 104 F. App'x at 493 ("Moreover, Lee may not base his claim against the individual defendants upon their denial of his administrative grievances. Section 1983 liability may not be imposed simply because a defendant denied an administrative grievance or failed to act based upon information contained in a grievance."); *Nwaebo v. Hawk-Sawyer*, 83 F. App'x 85, 86 (6th Cir. 2003) (same); *Simpson v. Overton*, 79 F. App'x 117, 120 (6th Cir. 2003) ("[T]he denial of an appeal cannot in itself constitute sufficient personal involvement to state a claim for a constitutional violation."). Accordingly, Sparks fails to state a valid § 1983 claim against Aiken, and she therefore should be dismissed from this action.

### III. CONCLUSION

For the foregoing reasons, the Court **RECOMMENDS** that Dr. Hutchinson's motion for summary judgment on the pleadings **(Doc. #14)** and Aiken's motion to dismiss **(Doc. #28)** be

**GRANTED**, and that Sparks' complaint be dismissed **WITHOUT PREJUDICE** as to Dr. Hutchinson and **WITH PREJUDICE** as to Aiken. In addition, the Court **RECOMMENDS** that Sparks' motion to amend his complaint for punitive damages be **DENIED AS MOOT**. **(Docs. #23, #24)**.

Dated: January 4, 2017　　　　　　　　　　　s/David R. Grand
Ann Arbor, Michigan　　　　　　　　　　　　DAVID R. GRAND
　　　　　　　　　　　　　　　　　　　　　United States Magistrate Judge

### NOTICE TO THE PARTIES REGARDING OBJECTIONS

Either party to this action may object to and seek review of this Report and Recommendation, but must act within fourteen days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and Fed.R.Civ.P. 72(b)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of HHS*, 932 F.2d 505 (6th Cir. 1991)*; United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing objections which raise some issues but fail to raise others with specificity will not preserve all objections that party might have to this Report and Recommendation. *Willis v. Secretary of HHS*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). A copy of any objection must be served upon this Magistrate Judge. E.D. Mich. LR 72.1(d)(2).

Each **objection must be labeled** as "Objection #1," "Objection #2," etc., and **must specify** precisely the provision of this Report and Recommendation to which it pertains. Not later than fourteen days after service of objections, **the non-objecting party must file a response** to the objections, specifically addressing each issue raised in the objections in the same order and labeled as "Response to Objection #1," "Response to Objection #2," etc. The response

must be **concise and proportionate in length and complexity to the objections**, but there is otherwise no page limitation.

## CERTIFICATE OF SERVICE

      The undersigned certifies that the foregoing document was served upon counsel of record via email addresses the court has on file.

                                              s/Eddrey O. Butts
                                              EDDREY O. BUTTS
                                              Case Manager

Dated:  January 4, 2017